The STATE of Texas, Appellant,

v.

CITY OF DENTON, Appellee.

No. 17787.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 24, 1976.

Rehearing Denied Oct. 22, 1976.

1. Emphasis added.

John L. Hill, Atty. Gen. of Texas, and David R. Thomas, Asst. Atty. Gen., Austin, for appellant.

Jack Gray and John L. Sullivan, Paul C. Isham, City Atty., Denton, for appellee.

## OPINION

SPURLOCK, Justice.

This action was brought by the State of Texas on behalf of North Texas State University against the City of Denton to secure the closing and abandoning, by eminent domain or otherwise, of two blocks of Prairie Street and two blocks of Avenue D, both public streets within the corporate limits of the City of Denton. The trial court granted the City's Motion for Summary Judgment and held that the City of Denton, Texas, a Home Rule City under the Constitution and laws of the State of Texas, has as a matter of law, exclusive dominion and control over the public streets of the City of Denton, including the property involved in the suit, and that, as a matter of law, North Texas State University, by or through the State of Texas, has no power of eminent domain or dominion over such streets. The State appeals from this judgment.

Judgment affirmed.

We hold that North Texas State University, by or through the State of Texas, could not acquire the interest of the City of Denton in property currently used as City streets because it had no power of eminent domain, or exclusive dominion over, such public streets.

During oral submission the parties agreed that this is a case of first impression, that there are no fact issues involved, that the case should be decided strictly on the legal question above described, that the title to all City streets is in the State, that the City of Denton controls streets within its corporate limits as trustee for the public, and that these streets are within the corporate limits of said City.

The State seeks to establish the right of the University to use these streets for senior college purposes. Prairie Street runs east-west, and Avenue D runs north-south. They intersect in the center of the 4-block area the University desires to use for its health, physical education, and recreation center. The University owns or has the exclusive possessory rights to all properties abutting the segments of the streets here in question.

The Board of Regents of the University, by appropriate action, requested the Attorney General of Texas to institute the necessary legal steps to accomplish their objective. The suit was filed by the State to confirm its title in the streets it sought to have closed or, in the alternative, to invoke its sovereign power of eminent domain to acquire any interest the City of Denton may have in the land now occupied by the segments of those streets.

The State relies upon the rule of law stated in Section 2.2, Nichols on Eminent Domain (1975), to the effect that, "If the sovereign . . . on its own behalf and for its own sovereign purposes, seeks to acquire such property by eminent domain, the character of the 'res' as public property, generally, has no inhibiting influence upon the exercise of the power."

It then takes the position that the University is an arm of the State and that by the terms of the Texas Education Code, Sections 95.30 and 105.41, such University has the power of eminent domain.

A careful reading of the above Section 2.2 concerning the taking of public property by eminent domain, reveals the fact that most of the decisions of other jurisdictions are based upon the construction of statutes in the jurisdiction where the proceedings were had.

The general rule is stated in 35 A.L.R.3d 1293, at pages 1334 and 1341, "Condemnation—Of Public Entity's Land": "It is a generally accepted rule that property already devoted to a public use cannot be appropriated for another public use inconsistent with the prior use absent express legislation to that effect, or a necessary implication of such power from general powers which have been granted the particular governmental unit in question, and this rule is applicable to condemnation by a governmental subdivision of a state, or its agency, of the property of another such subdivision or agency."

Therein the author states that the cases turn upon whether the governmental body involved in any particular case has been given the power, under the relevant statutes, to condemn the particular property sought. The author cautions the reader to carefully examine the statutes of the particular states in order to not draw an unwarranted conclusion.

It then becomes the duty and it is the province of the Court to construe the statutes here involved.

■■■ The power of eminent domain is vested in the sovereign State of Texas limited only by the due process guarantee that the taking is for a public use and that just compensation shall be paid to the one from whom the property is taken. Through the legislature it may delegate this power with such limitations as it chooses to impose.

An analysis of the language used and the construction thereof by the courts in regard to the power of eminent domain granted by the legislature to various arms and subdivisions of the State will assist this Court in determining the solution of the controversy here before us.

## POWERS OF HOME RULE CITIES

Under the express provisions of Section 16 of Article 1175, V.A.T.S., the City of Denton, as a Home Rule City, has "exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards" within the City. Under Section 18 of said Article,

Denton has the power "to control, regulate, and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground. . . . " Section 15 of said Article gives Home Rule Cities the power of eminent domain and the right to take the fee in lands so condemned, and such power and authority shall include the right to condemn *public property* for such purposes.

In *City of Tyler v. Smith County,* 151 Tex. 80, 246 S.W.2d 601 (Tex.Sup., 1952) that Court held that Tyler, a Home Rule City, had the express authority to condemn public property for street purposes. In that case the Court held that the City could open a street through an area within the City which the county had previously dedicated as a public square. It cites the above Section 15 of Article 1175, and emphasizes that the City has the power and authority to condemn public property for that purpose.

In *The City of Mission v. Popplewell,* 156 Tex. 269, 294 S.W.2d 712 (Tex.Sup., 1956), that Court stated that the interest of Home Rule Cities is as follows: "Thus the interest which a city has in its streets and alleys is unique and legally sui generis. It has no proprietary title but exercises many of the rights of title on behalf of the public. . . The control is so exclusive that the city is liable to the public for failure to properly maintain the street as a safe way of travel. . . . *This interest has been regarded as sufficient to qualify as a possessory right which will support an action in trespass to try title.*" (Emphasis added.)

See also both opinions in *Sierra Club v. Austin Independent School District,* 489 S.W.2d 325 (Tex.Civ.App., Austin, 1972, reversed on other grounds, 495 S.W.2d 878, Tex.Sup., 1973); and the opinion in *City of Fort Worth v. Taylor,* 162 Tex. 341, 346 S.W.2d 792 (Tex.Sup., 1961).

## POWER TO CONDEMN GRANTED TO THE TEXAS TURNPIKE AUTHORITY AND THE STATE HIGHWAY COMMISSION

Article 6674v established the Turnpike Projects. Section 5(h) thereof empowered

the Authority to acquire *public lands* by right of condemnation. In *Texas Turnpike Authority v. Shepperd,* 154 Tex. 357, 279 S.W.2d 302 (Tex.Sup., 1955), that Court held that this Act of the Legislature empowered this Authority to condemn public and private property whether or not located within boundaries of any city or other subdivision, as well as property already devoted to public use. It further held that the Act authorized this Authority to change and relocate any street under the supervision of the State, or any county, or any political subdivision, or of any city or town. By express language contained in this Act of the Legislature the right of Home Rule Cities to control the streets was modified and that authority was delegated to the Turnpike Authority for the purposes therein stated. Section 8—Condemnation of property—further granted the Texas Turnpike Authority all the power that is available to the State Highway Commission.

The Legislature enacted Art. 6674w, V.A.T.S., which granted the Texas Highway Commission extensive powers, including the right to acquire property by condemnation whether it be *public* or private and wherever located. Section 5 thereof authorized the Commission to exercise any power within the limits of any county, incorporated city, town or village, *including Home Rule Cities,* as authorized by this Act. " . . . such act or exercise of power shall qualify and render inexclusive the dominion of such counties, cities, towns or villages, including Home Rule Cities, with respect to the specific streets, alleys, and other public ways affected by such act or exercises of power, . . . ."

In *Hale v. City of Dallas,* 335 S.W.2d 785 (Tex.Civ.App., Dallas, 1960, ref., n. r. e.) that Court had before it a construction of the above statute and held that the Highway Commission had exclusive dominion and control over a certain street in the City of Dallas. Dallas is a Home Rule City. In discussing its ruling, that Court stated that the following rules are applicable (p. 787): " 'The highways of the state, including streets of cities, belong to the state, and the

state has full control and authority over them. They "are the property of and for the use of the state, which through its Legislature, has absolute control over same, which control it may or may not, from time to time, delegate to the local authorities." *Robbins v. Limestone County,* 114 Tex. 345, 268 S.W. 915; *Travis County v. Trogdon,* 88 Tex. 302, 31 S.W. 358; *Delta County v. Blackburn,* 100 Tex. 51, 93 S.W. 419, 422; *Coleman v. Thurmond,* 56 Tex. 514; *West v. City of Waco,* (Sup.Ct.) 116 Tex. 472, 294 S.W. 832.' "

It quoted from *Robbins v. Limestone County,* 114 Tex. 345, 268 S.W. 915, 918, as follows: " 'The establishment of public highways being primarily a function of government belonging to the state, the right to establish them resides primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the state, or to such other agency or instrumentality, general or local in its scope, as it may determine. The exercise of this right by a political subdivision of the state, or by local officers, is founded upon statutory authority therefor. The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate. * * * ' "

It then stated that since Art. 6673 to 6674w–5 is primarily involved, "Particularly relevant to our problem is the recent Supreme Court case of *State of Texas v. City of Austin et al.,* 160 Tex. 348, 331 S.W.2d 737, 741, holding in part: ' * * * For many years the cities and towns of Texas have enjoyed exclusive dominion and control over the streets, alleys and other public places within their respective corporate limits, but this was pursuant to a statutory delegation of authority. See Articles 1016, 1146 and 1175, Vernon's Ann.Tex.Civ.Stat. The Legislature acting for the state has primary and plenary power to control and regulate public roads and streets. It may delegate that power to counties or municipal corporations, but such a grant of authority may be revoked or modified at any

time. See *Robbins v. Limestone County,* 114 Tex. 345, 268 S.W. 915; *West v. City of Waco,* 116 Tex. 472, 294 S.W. 832; 64 C.J.S. Municipal Corporations §§ 1686, 1689. The statutory power of cities and towns over public ways within their corporate limits has now been abridged by Sections 2 and 5 of House Bill 179. See Articles 6674w–1 and 6674w–5, Vernon's Ann.Tex.Civ.Stat. It is there provided that the State Highway Commission shall have the power to construct, maintain and operate designated state highways in any area of the state, whether in or outside the limits of any municipal corporation, *and that the exercise of such power shall qualify and render inexclusive the dominion of any city or town with respect to the specific streets, alleys or other public ways affected thereby.'"* (Emphasis added.)

## POWER OF A SUBDIVISION OR ARM OR BRANCH OF THE· GOVERNMENT TO ACQUIRE PROPERTY BY CONDEMNATION WHICH WAS GRANTED TO IT IN GENERAL TERMS BY THE LEGISLATURE BUT WITHOUT BEING GIVEN SPECIFIC POWER TO CONDEMN PUBLIC PROPERTY OR PROPERTY OF ANOTHER BRANCH OF THE GOVERNMENT

In the *Sierra Club v. Austin Independent School District* cases, supra, the courts held that the Austin Independent School District had been granted the power to acquire the fee in real property for school purposes by the exercise of eminent domain. They held that it did not have the power to condemn dedicated public park lands belonging to the people of the City of Austin. The court stated that Home Rule Cities had the power to condemn public property and that the Highway Commission was also so empowered. The Legislature has specifically given each this power. The Court of Civil Appeals stated at page 334 that: "The Legislature could have made a similar broad grant to school district if it had been the legislative purpose to do so."

## POWER TO CLOSE CITY STREETS GIVEN TO STATE SUPPORTED UNIVERSITIES IN COUNTIES WITH POPULATION OVER 1,500,000 AS ANOTHER INDICIUM OF LEGISLATIVE INTENT

The Legislature apparently was of the opinion that it had not granted state supported colleges or universities the power to acquire by condemnation streets or alleys within a city. In its wisdom it has not granted this power to all state supported universities but in effect has limited it to those located in Harris County. In addition to the eminent domain power already given the University of Houston under Section 111.38 (Acts of 1961 and 1963), the Legislature has specifically permitted State supported universities and colleges to close streets. This Act of the 62nd Legislature, 1971, Education Code, Sec. 51.904—Street Closing—provides as follows: "The governing body of a state-supported college or university in a county having a population in excess of 1,500,000 may vacate, abandon, and close a street or alley running through the campus if the state-supported college or university owns all of the real property abutting the street or alley."

## POWER GRANTED NORTH TEXAS STATE UNIVERSITY

All the following references are to the Education Code. Section 61.021 provides that the Coordinating Board, Texas College and University System, is an agency of the State. "It shall perform *only the functions* which are enumerated in this chapter and which the legislature may assign to it." (Emphasis added.) It further provides that functions not given to the Coordinating Board shall be performed by the governing boards of each college or university. Section 95.30—Eminent Domain—provides in part as follows: "The board has the power of eminent domain to acquire for the use of the system universities the lands necessary and proper for carrying out their purposes, in the manner prescribed in Title 52, Revised Civil Statutes of Texas, 1925, as amended. The taking of the land is for the

use of the state." Section 95.31 provides that a senior college, in the county in which the college is located, may acquire land by purchase or by condemnation.

Section 105.41—Extent of Powers—provides that "With respect to the management and control of the university, the board has the same powers and duties that are conferred on the Board of Regents, State Senior Colleges, with respect to institutions in that system."

The Legislature has not expressly granted a power to North Texas State University, the Coordinating Board, or the State of Texas to condemn for the use and benefit of North Texas State University public property or public streets and highways. The power of condemnation is expressed only in general terms.

## CONCLUSION

Although the title to the segments of the streets here involved is in the State, the State Legislature has delegated the exclusive control and dominion of those streets to the City of Denton.

In view of the express power given by Section 51.904 to close public streets, given only to state supported colleges and universities in counties of a certain size, we must infer from the Legislature's silence as to the others that the Legislature did not intend to confer the power to close public streets upon state supported universities in counties with a population of less than 1,500,000. The record does not reflect the population of Denton County. However, we may take judicial notice of the fact that the population of Denton County as stated in the last Federal Census was considerably less than 1,500,000. *Smith v. Patterson*, 111 Tex. 535, 242 S.W. 749 (1922).

No statute has granted express authority for North Texas State University to acquire the segments of the streets here involved by condemnation. Without such express authority the exclusive dominion and control over the streets by the City has not been modified.

Judgment affirmed.