**W.W. MERCIER and Betty J. Mercier, Appellants,**

v.

**MIDTEXAS PIPELINE COMPANY, Appellee.**

MidTexas Pipeline Company, Appellant,

v.

W.W. Mercier, Appellee.

John C. Mercier and W.W. Mercier, Appellants,

v.

MidTexas Pipeline Company, Appellee.

W.W. Mercier and Betty J. Mercier, Appellants,

v.

Teco Pipeline Company, Appellee.

W.W. Mercier, Appellant,

v.

Teco Pipeline Company, Appellee.

John C. Mercier and W.W. Mercier, Appellants,

v.

Teco Pipeline Company, Appellee.

Nos. 13–98–126–CV to 13–98–128–CV, 13–98–155–CV to 13–98–157–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 24, 2000.

Rehearing Overruled Sept. 28 and Oct. 5, 2000.

Dan Dennis Hartnett, San Antonio, for Mercier.

Charles B. McFarland, Vinson & Elkins, Houston, Thomas E. Sheffield, Houston, for MidTexas.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

This is a statutory condemnation proceeding. Landowners whose land was condemned for a pipeline right of way appeal the taking and the pipeline appeals the award of one of the landowners. The right of the pipeline to condemn the land under the power of eminent domain is challenged. We affirm.

MidTexas Pipeline Co. (MidTexas) is a partnership consisting of Teco Pipeline Co. (Teco) and Houston Pipe Line Co., with Teco as the managing partner. In 1995 MidTexas began acquiring property necessary to build a thirty-inch natural-gas pipeline from Gonzales County, Texas near the town of Dewville to Katy, Texas. In order to complete the project MidTexas had to acquire a right-of-way and permanent easement over three tracts of land owned by appellants, W.W. (William) Mercier, his wife Betty, and William's cousin, John C. Mercier. MidTexas negotiated with William to obtain the right-of-way over the three tracts of land; however, the parties could not reach an agreement. As a result MidTexas sought to acquire the right-of-way and easement through eminent domain by filing three separate petitions for condemnation of property in the 25th District Court of Gonzales County. MidTexas filed one petition (Cause No. 13–98–126–CV) against William and Betty Mercier. It filed the second petition (Cause No. 13–98–127–CV) against William Mercier, and it filed the third petition (Cause No. 13–98–128–CV) against William and John C. Mercier. Each petition sought a right-of-way and permanent easement, plus a temporary easement on a separate tract of land.

The judge of the 25th District Court appointed three special commissioners to assess the actual damages that appellants would incur due to the condemnation proceedings. After hearing evidence and argument the special commissioners made the following awards: (1) in Cause No. 13–

98–126–CV they awarded William and Betty Mercier $1,000 in damages; (2) in Cause No. 13–98–127–CV they awarded William Mercier $170; and (3) in Cause No. 13–98–128–CV they awarded William and John C. Mercier $7,500. The special commissioners also awarded MidTexas all of the rights requested in its petitions for condemnation. The awards were deposited in the registry of the court, and Mid-Texas ultimately built the pipeline across the three tracts of land.

After the special commissioners awarded the damages appellants filed objections and exceptions to the special commissioners' award, thus converting the administrative proceeding into a pending cause in the trial court.

Prior to trial, the trial court resolved the jurisdictional issues in MidTexas' favor, and the case proceeded to trial on the compensation issue. The jury reached a verdict that (1) the difference between the market value of the W.W. Mercier and Betty J. Mercier tract of land before and after MidTexas's taking of the easement was $1,100, (2) W.W. Mercier should receive $35,000 for his damages resulting from the condemnations in Cause Nos. 13–98–127–CV and 13–98–128–CV and the installation of the pipeline on the properties described therein and upon the property described in Cause No. 13–98–126–CV, and (3) that the difference between the market value of John C. Mercier's tract of land before and after MidTexas's taking of the easement was $10,000.

## THE JUDGMENTS

In Cause No. 13–98–126–CV the trial court ordered that MidTexas recover from W.W. Mercier and Betty J. Mercier the permanent right-of-way and easement and that the Merciers recover from MidTexas $100 as damages which was the amount the jury's verdict exceeded the $1,000 deposited in the court's registry. In Cause No. 13–98–127–CV the trial court ordered that W.W. Mercier recover from MidTexas $34,830 which was the amount the jury's verdict exceeded the $170 deposited in the court's registry. In Cause No. 13–98–128–CV the court ordered that MidTexas recover from John C. Mercier a permanent right-of-way and easement and that he recover from MidTexas $2,500, which was the amount the jury's verdict exceeded the $7,500 award deposited in the court's registry.

## PUBLIC USE

■ By their first and third issues, William and Betty Mercier assert that Mid-Texas took their property for private use without any judicial consideration of whether MidTexas would devote the property for public use. Article 1, section 17 of the Texas Constitution provides that without consent a person's property may not "be taken … for or applied to public use without adequate compensation being made…." TEX. CONST. art. 1, § 17. This provision means that one's property may only be taken without his consent for public use; a taking for private use is prohibited. *Maher v. Lasater,* 163 Tex. 356, 354 S.W.2d 923, 924 (1962). "That provision not only requires the payment of adequate compensation for property taken for public use, it prohibits the taking of property for private use." *Id.*

■ The right of eminent domain granted by the constitution resides in the legislature, and the legislature may declare the conditions of its use as well as granting the authority to exercise the right to non-governmental entities, so long as the exercise is for a public use. *State v. City of Denton,* 542 S.W.2d 224, 226 (Tex.Civ. App.—Fort Worth 1976, writ ref'd n.r.e.).[1]

1. *See also, e.g.,* TEX. NAT. RES.CODE ANN. § 111.019 *et seq.* (granting common carriers power of eminent domain for construction, maintenance, or operation of a common carrier pipeline); TEX.REV.CIV. STAT. art.1417

(granting telegraph corporations the power of eminent domain for the use of the corporation); TEX.REV.CIV. STAT. art. 1435a (granting power of eminent domain to certain oil and gas companies); TEX.REV.CIV. STAT. art. 1439

The determination of what constitutes a public use justifying the grant of the right of eminent domain is properly a political decision, and as such is for the legislature. *Coastal Indus. Water Auth. v. Celanese Corp. of America*, 592 S.W.2d 597, 600 (Tex.1979) (stating "[i]n the absence of allegations that the condemnor acted arbitrarily or unjustly, the legislature's declaration that a specific exercise of eminent domain is for public use is conclusive, and the condemnation proceedings are limited to a determination of the amount to be paid to acquire that use").

It seems to be a settled rule that where the use for which property is sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power, and the extent to which the property thereunder is to be taken, are political or legislative, and not judicial, questions, the legislative determination of which is conclusive, and not reviewable, by the courts. Those questions rest wholly within the legislative discretion.

*West v. Whitehead*, 238 S.W. 976, 978 (Tex. Civ.App.—San Antonio 1922, pet. refused).

■ However, whether a given set of facts constitutes a public or private use is ordinarily a question of law for the court to decide. *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex.App.—San Antonio 1998, review denied); *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469, 474 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). "It is equally well settled that the question of whether the use for which private property is taken is a public use is a judicial question, to be determined in the courts, although where the Legislature declares a particular use to be a public use the presumption is in favor of this declaration, and will be binding upon the courts unless such use is clearly and palpably of a private character." *West*, 238 S.W. at 978.

■ The power of eminent domain must be conferred by the legislature, either expressly or by necessary implication, and will not be construed from doubtful inferences. *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975); *Coastal States Gas Producing Co. v. Pate*, 158 Tex. 171, 309 S.W.2d 828, 831 (1958). In *Pate* the supreme court explained how courts should construe statutes granting this power:

Statutes granting the ... [power of eminent domain] are strictly construed in favor of the landowner and against those corporations and arms of the State vested therewith.

Strict construction is not, however, the exact converse of liberal construction, for it does not require that the words of a statute be given the narrowest meaning of which they are susceptible. The language used by the Legislature may be accorded a full meaning that will carry out its manifest purpose and intention in enacting the statute, but the operation of the law will then be confined to cases which plainly fall within its terms as well as its spirit and purpose.

*Pate*, 309 S.W.2d at 831.

### THE AUTHORITY TO CONDEMN

Appellees rely on Articles 1435 and 1436 for the legislative grant of their claimed right of eminent domain.

Article 1435 of the Texas Revised Civil Statutes provided, in part:

Gas, electric current and power corporations shall have power to generate, make and manufacture, *transport and sell gas*, electric current and power to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; ... to own, hold and use such

(granting power of eminent domain to sewer companies); TEX.REV.CIV. STAT. art. 6535 (granting power of eminent domain to certain railroad corporations); TEX.REV.CIV. STAT. art.

1433 (granting power of eminent domain to water company "[w]hen deemed necessary to preserve the public health").

lands, right of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation. In Articles 1435 through 1438, the term "corporation" includes partnerships. . . .

Act of June 19, 1987, 70th Leg., R.S., ch. 1079, § 1, 1987 Tex. Gen. Laws 3684, 3684–85 (current version at Tex. Util. Code Ann. §§ 181.007–008 (Vernon 1998) (effective September 1, 1997)) (emphasis added).

Article 1436 provided: "Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, right-of-way, easements and property of any person. . . ." Act of May 26, 1967, 60th Leg., R.S., ch. 306, § 1, 1967 Tex. Gen. Laws 730, 730 (current version at Tex. Util.Code Ann. § 181.004 (Vernon 1998) (effective September 1, 1997)).

It is undisputed that the pipeline here is not a common carrier, has not posted or filed tariff schedules with the Railroad Commission, does not transport gas or allow the dedication of its capacity to the public or anyone other than Teco Pipeline Company and Houston Pipe Line Company, and does not deliver natural gas to anyone for light, heat, power or other purposes from the pipeline segment between New Braunfels and Dewville. The gas that is transported is that of the two partners in Mid Texas Pipeline: Teco and Houston Pipe Line Company.

The two questions are whether the pipeline qualifies under article 1435 so as to be entitled to exercise eminent domain power and, under the circumstances, is such a use for a public purpose. We answer both in the affirmative.

■ Article 1435 states that a gas corporation, which includes partnerships, shall have the power to transport and sell gas. It is undisputed that the pipeline at issue is to transport gas to a distribution facility where it will eventually be sold. We do not find it critical that the gas transported is not owned by Mid–Texas, but rather by its partners. We hold that Mid–Texas Pipeline qualifies under the former Article 1435 as a gas corporation and is therefore imbued with the right of eminent domain under 1436.

■ The next issue is whether such a general and broad grant as applied to Mid–Texas here is for a "public purpose," and is in accordance with the constitutional rule requiring the taking of private property solely for public purposes.

Our review of the relevant cases has not revealed one in which the grant by the legislature, or its applicability to the entity claiming the right of eminent domain, has been successfully challenged. Some distinctions can be drawn between the principal cases in which Articles 1435 and 1436 constituted the authority of the pipeline's condemnation. *Anderson,* 985 S.W.2d at 564 (holding that a corporation operating a gas pipeline has the power of eminent domain if it devotes its private property and resources to public service and allows itself to be publicly regulated); *Loesch v. Oasis Pipe Line Co.,* 665 S.W.2d 595, 598–99 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (ownership of publicly regulated pipeline is "public use"); *Tenngasco Gas Gathering Co.,* 653 S.W.2d at 476 (holding that because legislation bestowing power was not "manifestly wrong or unreasonable," fact that use of property by pipeline company was covered by statute made it a public use); *Roadrunner Investments v. Texas Utilities Fuel Co.,* 578 S.W.2d 151 (Tex.Civ.App.—Ft. Worth 1979, writ ref'd n.r.e.) (Railroad Commission had right to allocate the company's gas and so is publicly regulated).

*Tenngasco Gas Gathering Co.* involved the construction of a pipeline to a petrochemical plant. 653 S.W.2d at 475. The owner of the pipeline transported gas to the plant and intended to reverse the flow at some future date, shipping synthetic gas from the plant. *Id.* However, at the time of the appeal, only natural gas had been sent to the plant. *Id.* This court upheld the taking in the face of a challenge that it

was for a private purpose and therefore contrary to the constitution, saying:

> Further, the legislative declaration that a use is public and the delegation of power of eminent domain is to be given great weight by the court in reviewing a complaint that a particular use, sanctioned by the legislature is, in fact, private. *Davis v. City of Lubbock, supra*, 326 S.W.2d at 704; *Housing Authority v. Higginbotham, supra*, 143 S.W.2d at 84; *West v. Whitehead, supra*. Such declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is "clearly and probably private." · *West v. Whitehead, supra*, at 978; See also *Davis v. City of Lubbock, supra*.; *Housing Authority v. Higginbotham, supra*; Comment, *Public Use as a Limitation on the Power of Eminent Domain in Texas*, 44 TEX. L.REV. 1499, 1502–03 (1966).

*Id.* at 475.

We cannot say that the purpose here is clearly private, manifestly wrong, or unreasonable. The legislature by its enactment has determined the importance to the public of moving natural gas from the producing areas to where it can be used. Probably no truer statement can be found in this area of Texas law than that by the supreme court in *Coastal States Gas Producing Co. v. Pate*, "As pointed out in *Housing Authority v. Higginbotham*, [135 Tex. 158, 143 S.W.2d 79, (Tex.1940) ], this Court has adopted a rather liberal view as to what is or is not a public use." *Pate*, 309 S.W.2d at 833. Accordingly, we find that the use at issue in this case qualifies as a "public use" so as not to offend the Constitution.

## JURISDICTION

By their second issue the Merciers argue that the court lacked jurisdiction to grant MidTexas' condemnation petition because there is no evidence to show that: (1) MidTexas' governing body had deter-

mined that the Mercier property was necessary for its pipeline project; and (2) that MidTexas engaged in good-faith negotiations when trying to secure the easements from them.

### 1. NECESSITY

■ Articles 1435 and 1436 give Mid-Texas the right to exercise the power of condemnation. Courts which have construed these articles have concluded that they do not require the condemnor to show that the property was "necessary" for public use in order to be condemned. *See, e.g., Valero Eastex Pipeline Co. v. Jarvis*, 990 S.W.2d 852, 856 (Tex.App.—Tyler 1999, pet. denied); *see also, generally*, Laura A. Hanley, Comment, *Judicial Battles Between Pipeline Companies and Landowners: It's Not Necessarily Who Wins, but By How Much*, 37 HOUS. L.REV. 125 (2000) (providing a thorough discussion of the condemnation process when initiated by a pipeline company). When a statute delegating the power of eminent domain does not require proof of necessity the condemnor need only show that its board of directors determined that the taking was necessary. *Anderson*, 985 S.W.2d at 565. *See Bevley v. Tenngasco Gas Gathering Co.*, 638 S.W.2d 118, 121 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). This determination is conclusive absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action. *Anderson*, 985 S.W.2d at 565–66. Therefore, once a company establishes that its right to condemn is derived from articles 1435 and 1436 and that its board of directors has determined that the taking was necessary, a court should approve the taking unless the landowner shows fraud, bad faith, abuse of discretion, or arbitrary and capricious action. *Id.*

■ In this case the evidence included a resolution from MidTexas and a general partnership agreement. Section 6.01 of the agreement stated that a management committee comprised of two representatives and one alternate for each partner

(Teco and Houston Pipe Line Co.) will govern MidTexas. The resolution stated that MidTexas needed to build and operate the pipeline to serve a public purpose. After extensive investigation by MidTexas, the best selected route of the pipeline to serve its public purpose will begin near Dewville and proceed through Gonzales County to Katy, Texas. Two representatives from both Teco and Houston Pipe Line Co. signed the resolution.

We conclude that the resolution was sufficient to satisfy the "necessity" requirement because it showed that the taking of the property was necessary to serve a public purpose. MidTexas was not required to produce a resolution finding that the Merciers' land was necessary for the pipeline project. *See id.* at 566. The Merciers have not shown that MidTexas engaged in fraud, bad faith, abuse of discretion, or arbitrary or capricious action. Although MidTexas did not have a board of directors to make the determination of necessity, its management committee could do so. *See Maberry v. Pedernales Elec. Coop.*, 493 S.W.2d 268, 271 (Tex.Civ. App.—Austin 1973, writ ref'd n.r.e.) (governing body or other authority having power to speak and act for condemnor can determine necessity).

### 2. GOOD-FAITH NEGOTIATIONS

In statutory condemnation proceedings the condemnor must show that it was unable to agree with the landowner on the amount of damages for the property. *State v. Schmidt*, 894 S.W.2d 543, 544 (Tex.App.—Austin 1995, no writ). This condition refers to a bona-fide attempt to agree on damages, which includes a bona-fide offer by the condemnor to pay the estimated true value of the land. *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 88–89 (Tex.App.—Houston [14th Dist.] 1997, writ denied); *Schmidt*, 894 S.W.2d at 544–45. The condemnor may satisfy the unable-to-agree requirement by making a bona-fide offer to a landowner that the condemnor in good faith feels is the amount of compensation due, and the landowner rejects that offer. *State v. Hipp*, 832 S.W.2d 71, 77–78 (Tex. App.—Austin 1992, writ denied).

The trial court held a hearing on the Merciers' challenge to its jurisdiction. At the hearing MidTexas' counsel asked William Mercier, "[T]he gentleman who was negotiating with you for that right-of-way ... offered you twice as much as you believed the property was worth even as late as January, 1996, isn't that right?" Mercier replied that he was offered $1,800 per acre for the permanent right-of-way and $300 for the temporary right-of-way. Mercier stated that he did not really know what the property was worth, but this was "twice what the Appraisal District had it appraised at."

Thus, the evidence showed that MidTexas made a bona-fide attempt to agree on damages because it made a bona-fide offer to pay an amount which was twice the value set by the appraisal district. The evidence does not show that MidTexas made an arbitrary or capricious offer. We hold that MidTexas met the unable-to-agree requirement and that it engaged in good-faith negotiations with the Merciers. *See Hipp*, 832 S.W.2d at 78. We overrule the second issue.

### MIDTEXAS' CROSS ISSUES

By two cross-issues MidTexas asserts that the trial court erred by allowing John and William Mercier to testify about damages because they did not disclose themselves as expert witnesses in response to discovery. MidTexas also asserts that there is no evidence to support the jury's findings on damages for William and John Mercier.

### A. John Mercier

During trial the Merciers' counsel asked John Mercier what sum of money would reasonably compensate him for his damages resulting from the condemnation and installation of the pipeline on his prop-

erty. MidTexas' counsel objected that John was not properly designated as an expert witness. The court overruled the objection, and John replied, "$10,000." The jury awarded him this amount.

 Lay witnesses may testify to the value of their real property if they can show a basis for their knowledge. *Barraza v. Koliba,* 933 S.W.2d 164, 169 (Tex. App.—San Antonio 1996, writ denied); *Burford Oil Co. v. Wadley,* 41 S.W.2d 689, 694 (Tex.Civ.App.—El Paso 1931, writ ref'd). We will not disturb a trial court's decision to allow a lay witness to testify about the market value of his property unless a clear abuse of discretion is shown. *Hochheim Prairie Farm Mut. Ins. Ass'n v. Burnett,* 698 S.W.2d 271, 276 (Tex. App.—Fort Worth 1985, no writ).

In the instant case when counsel asked John the basis for the $10,000 figure he replied that this was MidTexas' final offer to him prior to initiating condemnation proceedings. Because John stated a reasonable basis to support the $10,000 figure we conclude that the court did not abuse its discretion by admitting this testimony into evidence. We hold that the evidence is sufficient to support the jury's award of $10,000.

### B. William Mercier

 During trial counsel asked William Mercier what sum of money would reasonably compensate him for his damages resulting from the condemnation and installation of the pipeline on his property. At this point MidTexas' counsel made a hearsay objection, which the court overruled. William's testimony showed that MidTexas had offered him $1,100 in damages. The jury awarded this amount to him.

To preserve error an objection must state the specific grounds for the desired ruling if those grounds are not apparent from the context of the objection. TEX. R.APP. P. 33.1(a); *McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 74

(Tex.1989). In the instant case MidTexas did not object to William's testimony on the basis that he was not disclosed as an expert witness. We hold that MidTexas did not preserve their complaint for appellate review and that the evidence is sufficient to support the jury's award of damages. We overrule the cross-issues.

### MIDTEXAS' CROSS APPEAL

### (CAUSE No. 13–98–127–CV)

 By its first issue MidTexas asserts that the trial court erred in admitting evidence of property damages which are not recoverable as a matter of law. Special question three asked, "What sum of money, if paid now in cash, would fairly and reasonably compensate W.W. MERCIER and BETTY J. MERCIER for their damages, if any, resulting from the condemnation for and installation of the pipeline on their property caused by Teco Pipeline Company?" The jury awarded $35,000.

 During the trial of this case the Merciers' counsel offered Exhibit 41 into evidence "for all purposes as a summary of ... [William Mercier's] testimony regarding damages." The trial court admitted it in evidence without objection. Exhibit 41 is an itemized list of damages which Mercier incurred from the pipeline's construction. The damages totaled $36,108.

Because MidTexas did not object to this evidence nothing is preserved for our review. TEX.R.APP. P. 33.1(a). The amount of damages shown in Exhibit 41 supports the award of $35,000.

 MidTexas further complains that the judgment required it to compensate William Mercier for $35,000. MidTexas points out that special question three, *supra,* on which the judgment was based inquired about the conduct of Teco Pipeline Co., which was not a party to this proceeding. MidTexas argues that the judgment cannot stand because the jury found no such conduct on the part of Mid-Texas.

■ In the instant case Teco was the managing general partner of MidTexas. Teco's actions as the managing general partner bound MidTexas. *Hoggett v. Brown,* 971 S.W.2d 472, 491 (Tex.App.— Houston [14th Dist.] 1997, review denied). Any omitted question to that effect concerning agency must be deemed in favor of the judgment. *See Insurance Co. of N. Am. v. Morris,* 928 S.W.2d 133, 143 (Tex. App.—Houston [14th Dist.] 1996), *aff'd in part and rev'd in part on other grounds,* 981 S.W.2d 667 (Tex.1998). We overrule this issue.

### THE MERCIERS' SUITS AGAINST TECO

### (CAUSE NOS. 13–98–155, 156, 157–CV)

■ By their first issue the Merciers assert that Teco's attempt to take their property for its private benefit under the guise of a public benefit constituted fraud. By their third issue they complain that there was a fact question for the jury about whether fraud had occurred in connection with Teco's taking of their property.

■ To recover on a fraud action a plaintiff must prove that: (1) a material representation was made; (2) it was false; (3) when the speaker made the representation he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex.1997).

The evidence does not show that, when any agent for Teco or MidTexas represented to the Merciers that either Teco or MidTexas was taking their property for a public benefit, the agent knew that the representation was false or that the agent made the representation recklessly without any knowledge of the truth and as a positive assertion. Thus the evidence does not support the Merciers' fraud claim against Teco, and the court did not err in refusing

to submit a question on this issue to the jury. We overrule the first and third issues.

By their second issue the Merciers assert that the circumstances regarding the condemnation proceeding raised fact questions for the jury to decide. They complain of the trial court's refusal to submit the following questions to the jury: (1) "Do you find from a preponderance of the evidence that MidTexas Pipeline Company does not transport and sell gas at regulated rates through the pipeline installed on Landowners' property to individuals, the public and municipalities for light, heat, power and other purposes?"; (2) "Do you find from a preponderance of the evidence that MidTexas Pipeline Company does not devote its private property and resources to public service?"; and (3) "Do you find from a preponderance of the evidence that Teco Pipeline Company knowingly condemned the MERCIER property for a private purpose?"

■ The proposed jury questions were properly refused by the trial judge. They all go to the authority of the pipeline company to condemn the land, an issue that was appropriately determined as a matter of law by the court. *West v. Whitehead,* 238 S.W. at 978 (cited with approval in *Higginbotham,* 143 S.W.2d at 83) *Anderson,* 985 S.W.2d at 565; *Tenngasco Gas Gathering Co.,* 653 S.W.2d at 474. "[W]here the Legislature declares a particular use to be a public use the presumption is in favor of this declaration, and will be binding upon the courts unless such use is clearly and palpably of a private character." *West,* 238 S.W. at 978. Because the matter had been determined as a matter of law by the court, to submit underlying questions to the jury would serve no purpose.

■ Here the claim is that although the determination may be a matter of law, certain underlying factual determinations are necessary in order to make that determination. However, the trial court's juris-

diction in a condemnation action is dependent upon the right of the condemnor to take. *Cf. Hipp,* 832 S.W.2d at 75 (noting that the question of whether the condemnor was unable to agree with landowner regarding amount of damages a matter of jurisdiction). A court has the right to determine its own jurisdiction as a matter of law, even if that determination implicitly involves the resolution of fact issues. *Id.* at 75–76. Accordingly, the trial court was not required to submit questions concerning its jurisdiction to be determined by the jury. These proposed questions all went to the right of the condemnor to take, and thus were jurisdictional for the court.

We therefore hold that the trial court did not err by refusing to submit these questions to the jury. We overrule the second issue.

Due to our disposition of the above issue we need not address appellants' fourth issue. Tex.R.App. P. 47.1.

### FRIVOLOUS APPEAL

 William Mercier seeks sanctions under Rule 45,[2] Texas Rules of Appellate Procedure, against MidTexas for filing the appeal in Cause No. 13–98–127–CV, which we previously addressed. In determining whether sanctions are appropriate we must decide whether MidTexas had a reasonable expectation of reversal or whether it pursued the appeal in bad faith. *Diana Rivera & Assocs., P.C. v. Calvillo,* 986 S.W.2d 795, 799 (Tex.App.—Corpus Christi 1999, writ denied); *Tate v. E.I. DuPont de Nemours & Co.,* 954 S.W.2d 872, 875 (Tex.App.—Houston [14th Dist.] 1997, no writ). In the instant case, although we decided that MidTexas did not preserve the alleged error for review the record does not show that MidTexas pursued the appeal in bad faith or that it had no reasonable expectation of reversal. MidTexas brought forward sufficient arguments and citations for our consideration.

We hold that MidTexas' conduct does not warrant sanctions.

---

**2.** Rule 45 provides that "If the court of appeals determines that an appeal is frivolous, it may-on motion of any party or on its own initiative, after notice and a reasonable opportunity for response-award each prevailing party just damages." Tex.R.App. P. 45.