Mrs. Mattie HALBERT et al., Appellants,

v.

The UPPER NECHES RIVER MUNICIPAL WATER AUTHORITY, Appellee.

No. 14094.

Court of Civil Appeals of Texas.

Houston.

May 2, 1963.

Rehearing Denied May 23, 1963.

Stone & Stone, Wm. Emerson Stone, Jr., Jacksonville, for appellants.

Johnston & Johnston, Luther C. Johnston, Franklin C. Williams, Palestine, for appellee.

WERLEIN, Justice.

This condemnation suit was brought by appellee, Upper Neches River Municipal Water Authority, sometimes called District, to acquire the surface of 321.02 acres of land, a part of 820.3 acres consisting of four contiguous tracts of land owned by appellants, in Anderson County, Texas. Judgment was rendered on the jury verdict vesting title to the surface of the land in appellee and awarding appellants $4,857.60 in addition to the sum of $16,900.00 awarded by the Special Commissioners and theretofore deposited by appellee in the registry of the County Court of Anderson County and withdrawn by appellants, with interest on the sum of $4,857.60 from May 2, 1961, the date of the taking, until payment thereof to the Clerk of the County Court of said county.

Appellee is a conservation and reclamation district created by Article 8280–157 of Vernon's Annotated Texas Statutes, pursuant to and as expressly authorized by Sec. 59 of Article XVI of the Constitution of the State of Texas, Vernon's Ann.St., with power of eminent domain, and authority to exercise such rights, powers, privileges and functions as provided by the act creating it and by the general laws of the State pertaining to water control and improvement districts not in conflict with the provisions of such act. The District's powers are exercised through a Board of Directors consisting of three members appointed by the Governor of Texas, with the advice and consent of the senate.

On March 3, 1961 the District adopted a resolution showing the necessity for acquiring the surface of the land in question for the Blackburn Dam and Lake Palestine, and in effect instructing the general manager of the District to file eminent domain proceedings against the owners of the property involved in this suit for the location, construction, operation and maintenance of said dam and lake. Lake Palestine has a firm supply of 40,000,000 gallons of water per day and some 8,000 acres of land have been acquired for Stage II and Stage III of the project below State Highway No. 155. In order to complete the program much more land will have to be acquired.

This suit was regularly brought and the necessary allegations are set out in appellee's petition or statement, showing, among other things, the necessity of acquiring the property of appellants consisting of the surface of said 321.02 acres. On January 18, 1962 the trial court set as the time for trial March 13, 1962 at 9 o'clock a. m. On March 12, 1962, appellants filed what they called a "Plea to The Jurisdiction In The Form of an Answer to the Condemnor's Allegations of the Right to Take." In its motion to strike such plea filed March 13, 1962, appellee alleged that appellants' plea was filed without leave of court less than seven days prior to March 13, 1962; that it set up new

matter never before alleged by appellants, and that such pleading came as a surprise to appellee and appellee was not prepared to proceed with the trial unless such plea was stricken. The court granted appellee's motion to strike and the case proceeded to trial.

Appellants in their brief state that they do not question appellee's right to acquire lands north of the Blackburn Dam site at elevation 327 mean sea level and below. In their plea, which was stricken, they allege in substance that the question of public use is jurisdictional, and that this suit should be dismissed insofar as it concerns the land lying between elevation 327 feet and 355 feet because such land is not reasonably essential to the successful operation of Lake Palestine, and hence the taking of such land is in violation of the State and federal Constitutions; that appellee holds a permit from the State Board of Water Engineers to appropriate annually from the Neches River 196,000 acre feet which is equivalent of a water supply capable of producing 174,977,-000 gallons per day, and that the City of Palestine has not authorized a bond issue to finance such a program; that appellee is not empowered by the Article creating it, and amendments thereto, to build the water supply as contemplated by appellee, and that until the electorate duly qualified to vote on a tax and/or revenue bond issue votes an amount sufficient to permit the building of a dam for Stage III and the acquisition of some 12,000 additional acres of surface on which to place the additional water, the taking is clearly not in the public interest, nor is it a taking for a public purpose, and that full protection at this time of the public interest of the City of Palestine has been more than adequately served by Stage II of the project which creates a water supply of 40,000,000 gallons per day.

Appellants in their first four Points assert that the judgment of the trial court should be reversed because no public use exists for the land lying above elevation 327 feet mean sea level and below elevation 355 feet and because the court struck the pleading of appellants which questioned the right of the Authority to take land lying between said elevations, and further because the trial court refused appellants' specially requested Issue No. 1 as to the right to take the land below elevation 355 and above elevation 327.

Appellants admit that their first four Points are not germane to any errors assigned either in their original or their amended motions for new trial. They assert, however, that such Points of Error are of the fundamental type and that this Court is required to consider them although not assigned as errors in the trial court. Rule 374, Texas Rules of Civil Procedure, provides that a ground of error not distinctly set forth in the motion for new trial, in cases where a motion for new trial is required, shall be considered as waived. It is our view that appellants have waived their assignments of error contained in their first four Points by not including them in their original or amended motions for new trial. The trial court was not given an opportunity to consider or pass upon such assignments.

■ Prior to filing their so-called plea to the jurisdiction, appellants did on November 2, 1961, in their motion for right to open and close, make the following statement: "Secondly, Defendants-Condemnees deny that Plaintiff-Condemnor in this cause is clothed with authority and the right of eminent domain as to the land lying above elevation 327 as aforesaid and that in addition to the issue of market value of that surface acreage and the damages to the remainder, there exists the question of the right to take." In view of the fact that appellee was informed by said motion that appellants were questioning appellee's right to take land above elevation 327, we are of the view that the trial court should not have stricken appellants' plea to the jurisdiction questioning the right or authority of the District to take above such elevation. As stated, however, appellants have waived

such error by failing to assign the same in the trial court. Their reason for not assigning such action as error appears to be their mistaken view that such error was fundamental and therefore could be raised in the appellate court for the first time without having assigned it in the trial court.

■ "Fundamental error" has become, under the late decisions of our Supreme Court, somewhat of a rarity. It is only when the point is one that involves a matter of public interest and where the record affirmatively and conclusively shows error that the rule of fundamental error may be invoked. In McCauley v. Consolidated Underwriters, 157 Tex. 475, 304 S.W.2d 265 (1957), our Supreme Court in a per curiam opinion stated:

"Since the Rules make no provision for consideration of errors apparent on the face of the record, the concept of fundamental error is much narrower than it was under Art. 1837, and many errors formerly treated as fundamental may not be so regarded now. The majority opinion in the Ramsey case does not attempt to give an all-inclusive definition of the term, but holds that an error which directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, is fundamental. When the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter, the error will also be regarded as fundamental."

The Supreme Court, in Ramsey v. Dunlop, 1947, 146 Tex. 196, 205 S.W.2d 979, in discussing its action in refusing an application for writ of error for want of merit in the case of City of Santa Anna v. Leach, Tex.Civ.App., 173 S.W.2d 193, said:

"It follows that that action did not in any sense amount to a holding that the court of civil appeals is without authority to consider fundamental error when it is apparent on the face of the record.

We were merely adhering to the rule that an appellate court will not go into the statement of facts to examine and weigh the evidence in order to determine whether an error was committed, even though it may be claimed to be fundamental. See Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S.W. 533."

■ In the instant case no fundamental error is apparent on the face of the record. The unsworn plea of appellants does allege lack of jurisdiction because of excess taking by the District but no lack of potential jurisdiction is shown. In order to decide whether the taking complained of by appellants was excessive and not necessary for the purpose contemplated by appellee, it would be necessary to go into the statement of facts and to examine and weigh the evidence in order to determine whether an error was committed. Appellants' plea to the jurisdiction merely alleges certain facts and conditions which might raise a fact issue as to whether or not there was an excess taking. Although we were not required to do so, we have read the statement of facts and find that the evidence introduced does no more than raise a fact issue as to whether the taking above elevation 327 and below elevation 355 was necessary for the purposes and completion of the project that had been duly authorized. Neither the plea nor the evidence shows conclusively that the taking above 327 was not necessary for the purposes of the project. This Court cannot say as a matter of law that the property taken above elevation 327 and below elevation 355 was not for a public use.

In the instant case the error, if such there was, does not affect the interest of the public generally. It merely affects the taking of private property of certain individuals in which the public generally would not be interested. In this respect, the present case is distinguishable from Ramsey v. Dunlop, supra, which involved an election to a public office in which the entire community was interested.

In Schafer v. Stevens, Tex.Civ.App.1961, 352 S.W.2d 471, the court reiterated the rule enunciated in McCauley v. Consolidated Underwriters, supra; Ramsey v. Dunlop, supra; City of Deer Park v. State ex rel. Shell Oil Co., etc., 154 Tex. 174, 275 S.W.2d 77, 85; and then stated that it had been held many times, both before and since promulgation of the new Rules in 1941, that when it is necessary to examine the statement of facts to discover error, the error is not fundamental (citing numerous cases).

Appellants did not assign in the trial court error in refusing their requested issue, and hence they have waived any possible error in such connection. After their plea to the jurisdiction was stricken, there was no pleading which would support the submission of such issue, and no trial amendment was requested. Rules 277 and 279, T.R.C.P., require submission only of such issues of fact as are controlling and are raised both by the pleadings and the evidence, and it is not error to refuse to submit issues not thus supported. It would be impossible to determine whether the refusal of the court to give appellants' requested issue was error without going into the statement of facts. Therefore, if the trial court did err, the error would not be of the fundamental type.

After eliciting from appellee's agent, Louis J. Flanagan, that he had made in behalf of appellee a bona fide offer to purchase appellants' property involved in this cause, the following evidence was adduced by appellee's counsel:

"Q. What was your offer that you made to him at that time?

"A. $16,900.

"Q. That was for the surface rights of the land, we will say, that was included within the take line?

"A. Yes, sir."

After the latter answer, appellants' counsel objected to the amount of the offer being placed before the jury and asked that the same be stricken from the record, saying, "It is not necessary for the purpose of this hearing." Appellee's counsel replied, "We have no objection to it being stricken." Thereupon counsel for appellants asked that a mistrial be declared. The court promptly struck the testimony as to the amount offered and instructed the jury not to consider it, but overruled appellants' motion for mistrial.

At the time appellee's counsel asked Mr. Flanagan what the amount was he had offered appellants, appellants made no objection, nor did they object to the next question and answer. Had they objected to the question, it is quite likely that the court would have sustained the objection and the witness would not have been permitted to testify to the amount that he offered appellants. The questions were so framed as to apprise opposing counsel of the nature of the answers sought. It is our view that the objection came too late. Hix v. Wirt, Tex. Civ.App., 220 S.W.2d 530, writ ref., n. r. e. The only objection made by appellants was, "It is not necessary for the purpose of this hearing." It has been held that objections should be specific and not general. Jones v. Parker, Tex.Civ.App., 193 S.W.2d 863, writ ref., n. r. e., and should not be addressed to the sufficiency or weight of the evidence but to its admissibility. Gulf, C. & S. F. R. Co. v. Williams, Tex.Civ.App., 290 S.W. 846, error ref.; Early-Foster Co. v. Mid-Tex. Oil Mills, Tex.Civ.App., 208 S.W. 224, error ref.

Later, during his testimony, said witness was asked his opinion as to the value of the surface of the land in question, and answered, "$16,900.00." No objection was made to such question or answer. We are of the opinion that there is no reversible error in the court's refusing to declare a mistrial. Rule 434, T.R.C.P. It will be noted that there is no evidence in the record that appellants offered to sell to appellee the land in question for $16,900.00, or for any other amount. It was of course necessary for appellee to prove that it had failed to agree

with appellants on the value of their land to be taken as a prerequisite to prosecuting the condemnation suit. Isaac v. City of Houston, Tex.Civ.App., 60 S.W.2d 543, error dism.; Article 3264, Sec. 1, V.A.T.S.; Aronoff v. City of Dallas, Tex.Civ.App., 316 S.W.2d 302, writ ref., n. r. e.

The evidence shows that one W. L. Pickens, owner of an oil, gas and mineral lease from appellants on the 820.3 acres of land, which includes the 321.02 acres in question, was not made a party to this suit. It is appellants' contention that the trial court erred in proceeding with the trial since Pickens was a necessary and indispensable party. The lease which was executed in 1954, had been kept alive by payment of rentals, but there had never been any production on any part of the 820.3 acres. To special issues submitted, the jury found that the reasonable cash market value per acre of the mineral fee estate, subject to the leasehold estate of W. L. Pickens, under the 401.02 acres (representing the 321.02 acres plus 80 acres immediately west of the take line) was, immediately before taking the surface of the 321.02 acre tract on May 2, 1961, $20.00. The jury found the mineral estate was the same value immediately after the taking on said date. The findings of the jury are amply supported by the evidence.

Since this suit was brought to condemn only the surface of the 321.02 acres, it is our view that Pickens was not an indispensable party to the suit.

"The law is settled in this State that the minerals in place may be severed from the surface; that when so severed they constitute separate and distinct estates; that the 'fee simple title' to the surface estate may be in one person and the 'fee simple title' to the mineral estate in another person; they each constitute 'real property' * * *." County School Trustees of Upshur County v. Free, Tex.Civ.App., 154 S.W.2d 935, writ ref., w. o. m.

In that case the property covered by the lease had been developed and oil produced for more than ten years without need of the use of the surface of the two strips of land being condemned, whereas in the instant case there had never been any development on any part of the land. The court stated:

"If we are correct in our conclusion that appellants have the authority by exercise of the right of eminent domain to acquire the fee simple title to the surface estate only, and subject to the rights of the owners and lessees of the mineral estate, as they seek to do in this suit, then the owners and lessees of the oil and gas mineral estate are not necessary parties, since their rights are not in any way to be affected by the proceedings. 20 C.J. 919, Sec. 336."

It is true that the lessee Pickens could have been joined as a proper party since the lease confers upon him the usual surface rights incident to the exploration and development of the property for oil, gas and other minerals. Appellee, however, does not seek to condemn the rights of Pickens either in the mineral estate or surface. Appellee's suit does not in any way adjudicate such rights which Pickens might assert independently of the proceeding brought against appellants, since his rights and appellants' are separate and distinct. Ft. Worth & D. S. P. Ry. Co. v. Judd, Tex.Civ.App., 4 S.W.2d 1032, writ dism.

In National Ass'n of Audubon Societies v. Arroyo Colorado Nav. Dist. of Cameron and Willacy Counties, Tex.Civ. App., 110 S.W.2d 150, the condemnee who held the leasehold estate, contended that the State of Texas, owner of the fee simple estate, was a necessary party to the suit brought to condemn the leasehold estate. The court, through Justice Slatton, rejected such contention, and held that the legislature has delegated authority to navigation districts to determine for themselves the necessity of the taking, and has lodged in such districts the discretion to determine

what estate or interest in the required property shall be condemned. Appellee in the present proceeding is clothed with the same discretionary power, and unless such discretion is palpably abused by the District, the courts will not intervene. See Sinclair Pipe Line Co. v. Peters, Tex.Civ.App., 323 S.W.2d 651.

In Calvert v. Harris County, Tex.Civ. App., 46 S.W.2d 375, the County brought suit against the owner of land to widen Almeda Road. The court limited the damages to the value of the land taken exclusive of the minerals, stating that the possibility of minerals being at a particular place was very uncertain and if the minerals were underneath the land taken, they could be extracted by drilling upon the owner's land lying adjacent to the right-of-way taken. There was nothing to prevent the lessee in the present case from exploring and drilling for oil upon the land taken or upon lands adjacent thereto. The cases relied upon by appellants do not sustain their contention.

■ Appellants complain of certain cross-examination of their witnesses, B. F. Douglas and Louie Burks. The resolution of appellee dated January 26, 1961, which was admitted in evidence without objection, in substance gives the public generally and adjoining land owners reasonable access to Lake Palestine subject to the rules and regulations of the District. Counsel for appellee on cross-examination of said witnesses, over appellants' objections, was permitted to interrogate them as to the effect of such resolution on shoreline Lake property. Both witnesses testified in effect that such right of ingress and egress would not add any value to the remaining property. Louie Burks testified in substance that he didn't think the lakeshore would be worth a dime unless appellants had a deed to the property down to the water edge.

We fail to see how the admission of such testimony has caused harm to appellants. Rule 434, T.R.C.P. Had said witnesses testified that the privilege of access to the shoreline had added to the value of the remaining land, appellants might have some cause to complain on the ground that the District could at any time revoke such privilege. Perkins v. State, Tex.Civ.App., 150 S.W.2d 157, error dism.

On direct examination appellants' witness, Louie Burks, testified that the 321.02 acres were of the reasonable market value of $125.00 per acre. He also testified at some length as to how he arrived at that value. On cross-examination he was asked what the over-all increase in the value of lands was since 1940 in the area of the 820 acres. Upon objection by appellants, appellee limited the question to the Halbert 820 acre tract. Appellants then objected that the material date was May 2, 1961 and that the value of the property in 1940 had no materiality, was irrelevant and not the proper test. Over such objection, the witness was permitted to testify that the value of the property had advanced four to five times since 1940. After further examining the witness as to the land and improvements, counsel for appellee undertook to examine him as to the value placed upon said tract as shown by the inventory in the Halbert Estate which had been signed by Mr. Burks on July 9, 1945 as one of the appraisers of the estate. Appellants' objection to such value as being too remote was overruled and the witness read the valuation of $8,200.00 from the inventory which had not been introduced in evidence, thus showing that a valuation of $10.00 per acre had been placed upon the tract.

■ Appellee takes the position that such cross-examination was proper to test the accuracy and credibility of the witness, and to show his bias and prejudice. Since the purpose of cross-examination is to test the accuracy and credibility of a witness, the manner of such cross-examination and its extent must rest largely in the discretion of the trial judge. Texas Law of Evidence, McCormick and Ray, Second Ed., Vol. 1, p. 462, § 592. In Evansich v.

Gulf C. & S. F. R. R. Co., 61 Tex. 24, our Supreme Court said.

> "As all issues of fact must be determined by the testimony of witnesses, it would seem that any fact which bears upon the credit of a witness would be a relevant fact, and this whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, interest, want of memory, or other like fact."

In Murray v. Morris, Tex.Civ.App., 17 S.W.2d 110, error dism., the court said:

> " 'The purpose of cross-examination is to sift and to modify and have the witness explain what has been said on his direct examination, and if the witness by this process can be discredited and the weight of his testimony weakened, the right should not be denied.' "

See also 44 Tex.Jur., p. 1141, § 145.

■ Although great latitude must be allowed in cross-examination, it is our view that the trial court abused its discretion in permitting the cross-examination with respect to the land increasing four to five times in value since 1940 and as to the value placed upon the tract of land in the inventory. The jury, however, was evidently not influenced by the $10.00 per acre value placed on the tract as of 1940 in the inventory as evidenced by its finding of $60.00 per acre as the land's value. As men of common sense and judgment, the jury probably knew that the value placed upon the land in an inventory some twenty years before was not of any materiality or weight in determining the reasonable market value of the land in 1961. The large increase in the value of land throughout this State within the last twenty years is a matter of common knowledge.

Under the circumstances of this case and in view of the fact that some thirteen witnesses testified at length as to the value of the land in question, seven of whom testified to values less than the value found by the jury, and five, in addition to Mr. Burks, to values greater than the jury found, we have concluded that it cannot be said the evidence elicited on cross-examination by appellee was calculated to cause and probably did cause the rendition of an improper verdict and judgment. Rule 434, T.R.C.P.

■ We find no merit in appellants' eleventh point. On cross-examination, appellee's counsel asked appellants' witness, J. W. Hardeman, whether he permitted his taxes to go delinquent on his property. The court promptly and properly sustained appellants' objection to the question which was not answered, and instructed the jury not to consider it for any purpose. Counsel for appellee then asked the witness whether he made enough on his farm to pay his taxes. The court sustained appellants' objection and the question was not answered.

■ Appellants assert that the court erred in admitting evidence as to the income or lack of income from the farming operations of appellants' witness, B. F. Douglas. This witness testified at length on direct examination as to his own 565 acres of land in the vicinity of the land in question, and as to the type of farming, grasses, and livestock operations thereon, the number of cattle he ran on such land and the number of calves he marketed. He then testified that some of the cleared land of the Halbert tract was comparable to some of the land he had acquired, and also testified as to the nature of the Halbert property, its reasonable cash market value, and its highest and best use, which he said was growing cattle and marketing them. On cross-examination he was asked what his net return was on his half of the 100 calves he had marketed in 1961, and was permitted to answer that he had made a nice profit of about $3,000.00 for his part. The testimony of Mr. Douglas as to values was based largely on the income he thought would be derived from cattle operations on the land in question. The trial court did not err in permitting the witness to answer as he did on cross-examination.

■ We have considered all of appellants' Points of Error with the exception of their Point 5, which is multifarious, and which is based upon alleged cumulative errors consisting largely of assigned errors hereinabove discussed. We overrule such point. Johnson-Sampson Const. Co. v. W. & W. Waterproofing Co., Tex.Civ.App., 274 S.W.2d 926, ref., n. r. e.; Darling v. Panhandle & Santa Fe Ry. Co., Tex.Civ. App., 209 S.W.2d 660, ref., n. r. e.; Rule 418(b), T.R.C.P.

Judgment affirmed.