Affirmed and Memorandum Opinion filed April 28, 2009








Affirmed and Memorandum Opinion filed April 28, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00917-CV

_______________

 

LOTTIE JACKSON, Appellant

 

V.

 

WILBERT JACKSON, Appellee

                                                                                                                                               


On Appeal from the 310th District Court

Harris County, Texas

Trial Court Cause No. 2007-00969

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

In this
appeal from the trial court=s rendering of a final decree of divorce, appellant contends
that the trial court improperly limited her cross-examination of appellee.  She
further asserts that the trial court should have compelled appellee to respond
to her questions regarding her contribution of funds to improve his separate
property.  We affirm the trial court=s judgment.








I.  Factual and Procedural Background

Wilbert
and Lottie Jackson were married in May 1997, but ceased living together in
December 2006.  Wilbert filed for divorce on January 9, 2007; Lottie filed a
pro se response on February 20, 2007, asserting a general denial and seeking
alternative dispute resolution.  Our record contains no filings between Lottie=s response and the trial court=s order retaining this case on its
docket on May 30, 2007.  This order states that alternative dispute resolution
was waived.

On July
23, 2007, the trial court conducted a bench trial on Wilbert=s petition for divorce.  Wilbert was
represented by counsel; Lottie appeared pro se.  As is relevant here, Lottie=s cross-examination of Wilbert
proceeded as follows:

[Lottie]:          I would like to know where is the
Ford Mustang car?  Where is it?

[Wilbert]:       Where is - - I don=t know where.

[Wilbert=s
counsel]:  Speak up now.

[Wilbert]:       I don=t know where the Mustang is.[[1]]

[Lottie]:          I want to know when are you going
to give me my $4,000.00 for the roof that I put on your 1959 house?  I paid
$4,000.00 for your roof.  When are you going to pay me back $4,000.00 for the
roof at 10915 Dewayne.  I paid for it with my social security disability.  I=m legally blind and disabled.  I took that money and
put a roof over your house and I want my money back.  It=s $4,000.00.

The Court:      Do you have any questions you want to
ask him?

[Lottie]:          I want to know when he=s going to pay me back my $4,000.00.

[Wilbert]:       That roof was put on the house while
I was in the hospital.

[Lottie]:          When are you going to pay me back?

 








The Court:      You can=t be popping him, sir.  I mean it=s
his testimony, not yours.

[Lottie]:          That=s the way it=s always been.  That=s what it=s been since 2006.  They harrasing [sic] me and my
husband.  That=s why we are here today because of those people in the
background.  We were doing just fine.  We had a perfect marriage.  We were
doing okay until his family decided they didn=t want to give me some land that his aunt - -

The Court:      Do you have any questions you want to
ask him?

[Lottie]:          I want to know when he=s going to give me my $4,000.00.

The Court:      I don=t think he is going to answer that.  You got another one?

[Lottie]:          Okay.  I want to know where is the
car?

[Wilbert]:       You had the car.

[Lottie]:          I don=t have the car.  The car was under repossession just like the house
that was foreclosed on that I put a roof on.  All your things went bankrupt
because of your daughter - -

The Court:      Ma=am,
I=ll pass the witness.  I=m not going to listen to you make arguments.

[Lottie]:          Oh, okay.  I=m sorry.  He didn=t
answer any questions.

The Court:      Well, you know what, I have given you
a chance to ask him questions.

[Lottie]:          I want my money.

The Court:      Well. . .

[Lottie]:          When can I get it?

The Court:      Well, you=re out.

On redirect, Wilbert
testified that the house had been foreclosed on before the roof was replaced. 
Lottie testified that she was not aware of the foreclosure proceedings before
she paid for the roof. 








At the
conclusion of the trial, the trial court granted the divorce and later signed
the divorce decree.  Lottie subsequently retained counsel and filed a motion
for new trial.[2]  After this
motion was overruled,[3] this appeal
timely ensued. 

II.  Issue and Analysis

In a
single issue, Lottie asserts that the trial court erred by limiting her
cross-examination of Wilbert and instead should have compelled Wilbert to
answer her questions regarding her contribution of separate funds to improve
Wilbert=s property.  But as the excerpted
testimony supra demonstrates, Lottie did not present this complaint to
the trial court.  








To
preserve an error for appellate review, the rules of appellate procedure
require that the record show (i) the complaining party made a timely request,
objection or motion that stated the grounds for the complaint with sufficient
specificity to make the trial court aware of the complaint; and (ii) the trial
court expressly or implicitly ruled on the request, objection or motion. Tex. R. App. P. 33.1(a)(1)B(2); see also Ford Motor Co. v.
Ledesma, 242 S.W.3d 32, 43 (Tex. 2007) (stating that, generally,
preservation of error depends on whether the party timely made the trial court
aware of the specific complaint and obtained a ruling).  That Lottie
represented herself in the trial court does not relieve her from
preservation-of-error requirements.  Salmeron v. T-Mobile W. Corp., No.
14-07-00524-CV, 2009 WL 396212, at *1 (Tex. App.CHouston [14th Dist.] Feb. 19, 2009,
no pet. h.) (mem. op.) (AWe note that appellant=s pro se status does not
relieve him from the preservation-of-error requirements applicable to a
licensed attorney.@); see also Nabelek v. Bradford, 228 S.W.3d
715, 717 (Tex. App.CHouston [14th Dist.] 2006, pet. denied) (noting that courts
liberally construe pro se filings, but must still hold pro se litigants to the
same standards as licensed attorneys). 

On
appeal, Lottie argues that the trial court Acut off@ her cross-examination rather than
compelling Wilbert to answer her questions.  Lottie, however, never objected to
the non-responsiveness of Wilbert=s answer, asked the trial court to
compel Wilbert to answer, or lodged any complaint regarding the trial court=s alleged limitation of her
cross-examination.  Thus, Lottie failed to preserve this issue for our review. 
Tex. R. App. P. 33.1(a); see
also Phillips v. Phillips, CS.W.3dC, 2009 WL 792756, at *9, *12 (Tex.
App.CEl Paso March 26, 2009, no pet. h.)
(concluding wife waived complaints regarding charge error and closing argument
by failing to object at trial). 








Moreover,
even if we infer from the above-excerpted testimony that the trial court was
aware of Lottie=s complaint regarding its alleged limitation of her
cross-examination of Wilbert and implicitly overruled this complaint, a trial
court Ashall exercise reasonable control
over the mode and order of interrogating witnesses . . . .@  Tex.
R. Evid. 611(a).   The manner and scope of cross-examination rest in the
sound discretion of the trial court.  Hogue v. Kroger Store No. 107, 875
S.W.2d 477, 480 (Tex. App.CHouston [1st Dist.] 1994, writ denied).  As the
above-excerpted testimony shows, Lottie=s Across-examination@ of Wilbert devolved quickly into
argument.  Rather than attempting to establish that her expenditures were
subject to a claim for economic contribution[4]
or reimbursement,[5] Lottie
focused only on when she could get her money back from Wilbert.[6] 
Thus, Lottie has not established that the trial court abused its discretion in
controlling the manner and scope of her cross-examination of Wilbert.[7] 


Under
these circumstances, we overrule Lottie=s sole issue and affirm the trial
court=s judgment.

 

 

/s/        Eva M. Guzman

Justice

 

Panel
consists of Justices Yates, Guzman, and Sullivan. 









[1]  Wilbert had testified on direct that Lottie had this
car.





[2]  This motion provided, among other things, that
Lottie Awas acting pro se and the visiting judge who heard her
divorce case limited her presentation of her side of the case to one question .
. . .@





[3]  Although our record does not contain a ruling on
this motion, both Lottie=s notice of appeal and the trial court=s docket sheet indicate that it was denied after a
hearing on September 20,  2007.  





[4]  Tex. Fam.
Code Ann. ' 3.403(a) (Vernon 2006).  Under the Texas Family Code,
Aeconomic contribution@ does not include money expended on ordinary maintenance or repair.  Id.
' 3.402(b)(1).





[5] Id. '
3.408(b) (Vernon Supp. 2008).





[6]  Further, Lottie did not file any pleadings seeking
either economic contribution or reimbursement.  The failure to plead economic
contribution or prove reimbursement due generally precludes these claims. See
Raymond v. Raymond, 190 S.W.3d 77, 82B83
(Tex. App.CHouston [1st Dist.] 2005, no pet.).





[7]  The entirety of Lottie=s argument section of her brief is as follows:

Cross-examination is a safeguard essential to a fair
trial and a cornerstone of the quest for truth, and thus longstanding
principles of jurisprudence recognize the right and necessity of full and
complete cross-examination.  Russell Stover Candies, Inc. [v]. Elmore,
58 S.W.3rd 154 (Tex. Civ. App.-Amarillo 2001, review denied). [sic]

The purpose of cross examination is to test the truth
of the evidence given on the examination in chief.  Dorman v. Malloy,
481 S.W.2nd (Tex. Civ. App.-Beaumont 1966, writ refused n.r.e.) Halpert v.
Upper Neches River Municipal Water Authority, 367 S.W.2nd 879 (Tex. Civ.
App. Houston 1963, writ refused n.r.e.). [sic]

Here, the Appellant repeatedly asked Appellee about
the $4,000.00 she had spent putting a new roof on the Petitioner[=]s house, but never got a direct response.  The trial
[j]udge cut off that part of Appellant=s
cross-examination rather than compel the Appellee to answer the Appellant=s questions on cross-examination  (Reporter=s Record, Volume 1, page 10).

The explanation for Appellee=s lack of responsiveness to Appellant=s questions is that Appellee was avoiding making any
statement that might have been construed as an admission that Appellee had any
liability [to Appellant] for reimbursement to Appellant for reimbursement [sic]
of Appellant=s separate funds that Appellant spent to improve
Appellee=s separate property.

It is irrelevant that the house might have been
foreclosed on before Appellant paid to have a new roof put [on] Appellee=s house because Appellee continued to live in the
house and did not tell Appellant that the house had been foreclosed on, which
would have resulted from Appellee=s
failure to make the contractual payments he agreed to make when he financed the
house.

Many
of these statements are conclusory, opaque, and not supported by any legal
authority or record references.  See Tex.
R. App. P. 38.1(i) (AThe brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@). 
We further note that the statement-of-facts section of Lottie=s brief contains no record references.  See Tex. R. App. P. 38.1(g) (stating that
this section of an appellant=s brief must be
supported by record references).