# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00551-CV

**Block House Municipal Utility District, Appellant**

**v.**

**The City of Leander, Texas; and Anthony Johnson,
Individually and in his Capacity as City Manager, Appellees**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 07-632-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## O P I N I O N

Appellee, the City of Leander, Texas, approved the condemnation of an easement through parkland for a wastewater line. Appellant Block House Municipal Utility District, which had dedicated the property as parkland, filed suit opposing the condemnation. Under section 26.001 of the parks and wildlife code, to condemn parkland property, the City is required to determine that there is no feasible and prudent alternative to the taking. *See* Tex. Parks & Wild. Code Ann. § 26.001(a) (West 2002). The District contends that a feasible and prudent alternative exists and, therefore, that the City's determination was improper and no condemnation proceeding should occur. The district court granted summary judgment in favor of the City. We hold that a determination under section 26.001 that there is no feasible and prudent alternative to the use or taking of parkland is subject to judicial review only where there is a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily and capriciously. The summary judgment evidence demonstrates that the

City did not act fraudulently, in bad faith, or arbitrarily and capriciously. Therefore, we affirm the district court's judgment.

*Factual and Procedural Background*

On July 17, 2007, the City Council of the City of Leander, in a public meeting, passed a resolution authorizing condemnation of a portion of parkland property for a 24-inch wastewater line. The condemnation would consist of a twenty-foot-wide utility easement and a thirty-foot-wide temporary construction easement. The parkland property is located outside the municipality, and within the Block House Municipal Utility District. In authorizing the condemnation, the City[1] relied on the recommendations of its City Engineer and an independent engineering consultant, and concluded that no feasible and prudent alternative route for the wastewater line exists. The City considered an alternative route that does not traverse the parkland, but rejected that route "due to a large increase in cost and considerable engineering challenges as compared to the proposed Parkland Route."

The City's condemnation of District parkland stems from efforts by the City to prepare for its expected need to increase wastewater disposal capacity based on rapid population growth. Having determined that its existing wastewater treatment plant is inadequate to handle the anticipated increases, the City approved a project by which the Horizon Park Lift Station would be taken offline, a percentage of the wastewater flow would be transferred to the Brushy Creek

---

[1] Because appellees' interests in this appeal do not diverge, we refer to appellees—Anthony Johnson, individually and in his capacity as City Manager, and the City of Leander, Texas—collectively as "the City."

Wastewater Interceptor, and costly expansion to the Leander Wastewater Treatment Plant could thereby be postponed. The transfer of wastewater flow to the Brushy Creek Wastewater Interceptor requires that a new wastewater line be installed. The City approved a route for this wastewater line that requires the City to obtain an easement across District parkland (the "Parkland Route").

The District parkland includes 91.793 acres of land formally designated as a park and recreation area in July 1998, and a 2.765-acre tract previously occupied by a wastewater treatment plant and formally designated as a park and recreation area in November 2006. Representatives of the District appeared before the Leander City Council in the July 17, 2007 meeting opposing selection of the Parkland Route for the City's wastewater line. In addition, on August 22, 2007, the board of directors of the District made its own determination that the alternative route considered by the City for the wastewater line (the "Alternate Route") was both feasible and prudent.

On July 30, 2007, the District filed suit against the City, seeking injunctive and declaratory relief that a feasible and prudent alternative route exists for the wastewater line, which route does not require condemnation of the District's parkland property, and therefore, that the City may not initiate condemnation of any parkland property. The parties filed competing motions for summary judgment. On August 19, 2008, the district court granted the City's motion for summary judgment, denied the District's motion for summary judgment, and dismissed all of the District's claims. The District appeals.

*Analysis*

The gist of the District's lawsuit is that the City's decision to condemn the District's parkland property must be overturned because a feasible and prudent alternative route exists that does not result in condemnation of parkland property. The City filed a "traditional" motion for summary judgment on the ground that the district court could not substitute its judgment for that of the City on whether a feasible and prudent alternative exists. The District also filed a "traditional" motion for summary judgment, asking the district court to find and declare that a feasible and prudent alternative exists to the taking of the District's parkland property.

We review the district court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). Under the "traditional" Rule 166a(c) standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). When, as here, both parties file motions for summary judgment and the court grants one and denies the other, we must decide all questions presented and render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

*Scope of Judicial Review*

It is well settled that a condemnor's discretion is nearly absolute in the absence of any applicable constitutional or statutory limitation. *See Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 268 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Luby v. City of Dallas*, 396 S.W.2d 192, 196-97 (Tex. Civ. App.—Dallas 1965, writ ref'd n.r.e.). Where the legislature

4

delegates to an entity the power to condemn, and the entity condemns property for public use, the extent to which the property is taken is a legislative question not generally reviewable by courts. *Housing Auth. v. Higginbotham*, 143 S.W.2d 79, 88-89 (Tex. 1940); *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 717 (Tex. App.—Corpus Christi 2000, pet. denied) (citing *West v. Whitehead*, 238 S.W. 976, 978 (Tex. Civ. App.—San Antonio 1922, writ ref'd)). The condemnor's exercise of discretion may be subject to judicial review, but only where there is a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily and capriciously. *See Newsom*, 171 S.W.3d at 268-69; *Boswell v. Brazos Elec. Power Coop.*, 910 S.W.2d 593, 599 (Tex. App.—Fort Worth 1995, writ denied); *Luby*, 396 S.W.2d at 196-97 (citing *Texas Elec. Serv. Co. v. Linebery*, 327 S.W.2d 657, 664 (Tex. Civ. App.—El Paso 1959, writ dism'd w.o.j.)).[2]

In the same way, the condemnor's determination that the exercise of eminent domain is necessary is conclusive absent a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily and capriciously. *Whittington v. City of Austin*, 174 S.W.3d 889, 898 (Tex. App.—Austin 2005, pet. denied); *Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 704 (Tex. App.—Houston [1st Dist.] 1984, no writ); *Maberry v. Pedernales Elec. Coop.*, 493 S.W.2d 268, 271 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.). This presumption applies as long as the condemnation statute

---

[2] In addition to challenging the condemnor's exercise of discretion, the condemnee may be able to assert that the condemnor did not have authority to condemn the property under the applicable constitutional and statutory provisions, *see City of Wichita Falls v. Thompson*, 431 S.W.2d 909, 910 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.), that the intended use of the property is not a "public use," *see Whittington v. City of Austin*, 174 S.W.3d 889, 896-97 (Tex. App.—Austin 2005, pet. denied), or that the condemnor failed to comply with any applicable procedural requirements, *see Walker v. City of Georgetown*, 86 S.W.3d 249, 254 & n.2 (Tex. App.—Austin 2002, pet. denied). The District does not make any such allegation in this lawsuit.

does not impose an affirmative obligation to plead and prove necessity. *See Mercier*, 28 S.W.3d at 719 ("When a statute delegating the power of eminent domain does not require proof of necessity the condemnor need only show that its board of directors determined that the taking was necessary.") (citing *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex. App.—San Antonio 1998, pet. denied)).

The City's approval of the condemnation of District parkland for purposes of expanding the City's wastewater capabilities was based on the authority of section 251.001 of the Texas Local Government Code. "When the governing body of a municipality considers it necessary, the municipality may exercise the right of eminent domain for a public purpose to acquire public or private property, whether located inside or outside the municipality . . . ." Tex. Loc. Gov't Code Ann. § 251.001(a) (West 2005). This Court recently construed the phrase "considers it necessary" in section 251.001, and held that the statute does not require affirmative pleading and proof of necessity. *See Whittington*, 174 S.W.3d at 902. Therefore, according to this Court in *Whittington*, a municipality has the burden to establish that its governing body made a determination of necessity under section 251.001 for acquiring the property at issue. *See id.* Upon the municipality's meeting this burden, the presumption of necessity arises, and the fact of necessity can be contested by the condemnee only by establishing affirmative defenses such as fraud, bad faith, or arbitrariness. *See id.* at 898, 902.

The District does not dispute the City's compliance with local government code section 251.001. Instead, the District alleges that the City's condemnation of parkland violates section 26.001 of the Texas Parks and Wildlife Code.

6

A department, agency, political subdivision, county, or municipality of this state may not approve any program or project that requires the use or taking of any public land designated and used prior to the arrangement of the program or project as a park, recreation area, scientific area, wildlife refuge, or historic site, unless the department, agency, political subdivision, county, or municipality, acting through its duly authorized governing body or officer, determines that:

(1) there is no feasible and prudent alternative to the use or taking of such land; and

(2) the program or project includes all reasonable planning to minimize harm to the land, as a park, recreation area, scientific area, wildlife refuge, or historic site, resulting from the use or taking.

Tex. Parks & Wild. Code Ann. § 26.001(a). The District seeks judicial review of the City's determination that "there is no feasible and prudent alternative" to the taking of the District parkland.

The scope of judicial review of a determination under parks and wildlife code section 26.001(a) that no feasible and prudent alternative exists mirrors the scope of review of a determination under local government code section 251.001(a) that the taking is necessary. Neither statute requires that pleading or proof of the applicable determination be made. *See id.*; Tex. Loc. Gov't Code Ann. § 251.001(a). Instead, the statutes merely require that the governmental entity make the determination. *See* Tex. Parks & Wild. Code Ann. § 26.001(a); Tex. Loc. Gov't Code Ann. § 251.001(a). Section 26.001(c) specifically provides that chapter 26 does not constitute a mandatory prohibition against the taking of parkland "if the findings are made that justify the approval of a program or project." *See id.* § 26.001(c). Unless a condemnation statute requires affirmative pleading and proof on the matter, the extent to which property is to be taken is a political or legislative question—not a judicial question. *See Whittington*, 174 S.W.3d at 898 (citing

7

*Higginbotham*, 143 S.W.2d at 88; *West*, 238 S.W. at 978). Therefore, the City has the burden to conclusively establish that its governing body made a determination under section 26.001(a) of no feasible and prudent alternative, and if it meets such burden, the District can contest such determination only by establishing that the City acted fraudulently, in bad faith, or arbitrarily and capriciously. *See id.* at 898, 902.

The District contends that section 26.003 of the parks and wildlife code contradicts the placement of a presumption in favor of the condemnor's determination that no feasible and prudent alternative exists. Section 26.003 provides: "A petition for the judicial review of the approval or disapproval of a program or project under this chapter must be filed within 30 days after the approval or disapproval is announced, or the review is barred." Tex. Parks & Wild. Code Ann. § 26.003 (West 2002). The District observes that the statute does not limit the scope of judicial review of determinations made under section 26.001, and concludes that, as a result, the scope of judicial review is not limited. However, the focus of section 26.003 is on the timing of a petition for judicial review, not on the scope of the judicial review. *See id.* We do not consider the phrase "judicial review of the approval or disapproval of a program or project under this chapter," standing alone, to provide a basis for de novo review of the approval of condemnation of parkland, particularly given the longstanding precedent that the necessity or expediency of appropriating any particular property for public use is not a judicial question. *See Higginbotham*, 143 S.W.2d at 89.

The District argues that the legislative history of parks and wildlife code chapter 26 reveals a legislative intent to "carve out an exception for parkland to the presumptive validity of a municipality's decision to condemn." The District relies on language from a 1969 report by the

8

Senate Interim Committee on Parks and Recreation, which recommended, among other things, enactment of chapter 26 of the parks and wildlife code.  The report asserts that "once a public utility or governmental agency selects a location or route, nobody can halt or change the location of the construction or prevent condemnation," and then declares that parklands' "continued protection and integrity must be maintained at all costs."  Tex. Sen. Interim Comm. on Parks & Recreation, "This Land Is Our Land:  A Report on Texas' Natural Env't," 61st Leg., R.S., at 39 (Feb. 12, 1969). However, the conclusion reached by the report as to this matter does not contain any recommendation regarding the scope of judicial review.  Instead, the report recommends:

> as a minimum starting point, a public law to require all agencies to consider alternate routes rather than to use parklands for new public facilities, to select the alternate routes if possible, and to give advance public notice and hearings of any intended invasion of our parklands, refuges, scenic, or scientific areas or historic sites.

*Id.*  Parks and wildlife code chapter 26 incorporates each of these three recommended requirements. *See* Tex. Parks & Wild. Code Ann. §§ 26.001(a), (b), .002 (West 2002).  The language of the report, at most, merely leaves room for the possibility that the senate committee would have favored a law establishing de novo review of an agency's condemnation of parkland.  The report provides no indication that the legislature intended chapter 26 of the parks and wildlife code to create such a scope of judicial review.

Having found no language in parks and wildlife code chapter 26 or its legislative history that would create an exception to the presumptive validity of the City's decision to condemn, we turn to the District's contention that an exception should apply here based on the District's

status as a governmental entity. *See* Tex. Const. art. XVI, § 59 (authorizing creation of municipal utility districts); Tex. Water Code Ann. § 54.201 (West Supp. 2008) (powers of municipal utility districts); *Northwest Austin Mun. Util. Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 824 n.3 (Tex. App.—Austin 2008, pet. filed) (municipal utility districts are political subdivisions of State).

The District contends that no presumptive validity should attach to the City's exercise of its discretionary power as condemnor because the District also is a governmental body with discretionary authority. However, the District fails to identify a legal source of discretionary power to reject the condemnation of its parkland. The City is expressly authorized by statute to exercise the right of eminent domain to acquire public property located outside the municipality for wastewater purposes. *See* Tex. Loc. Gov't Code Ann. § 251.001(a). In condemning the District's parkland, the City has exercised this right. Section 26.001 of the parks and wildlife code permits a use or taking of public land upon the municipality's determination that there is no feasible and prudent alternative; it does not prohibit such use or taking if a different governmental body determines that a feasible and prudent alternative does exist. *See* Tex. Parks & Wild. Code Ann. § 26.001(a). It is true that the District is authorized by statute to "provide parks and recreational facilities for the inhabitants in the district." Tex. Water Code Ann. § 54.201(b)(7); *see id.* § 49.463 (West 2008) (identifying "financing, developing, and maintaining recreational facilities for the people in the district" as a purpose of municipal utility districts). However, the District is not

10

expressly authorized or otherwise given discretion by statute to void another entity's decision to condemn a portion of the District's parkland property.[3]

The District also contends that the City's determination should not outweigh the District's opposing determination because "the will of the smaller unit shall control over the will of the larger unit." The District relies on *City of Laredo v. Webb County*, in which this Court considered a county's authority to construct an international toll bridge inside a city's municipal limits despite the city's objections. 220 S.W.3d 571, 574 (Tex. App.—Austin 2007, no pet.). In that case, the city and the county had "overlapping toll bridge authority," and each independently sought to construct the same bridge within the municipal limits. *Id.* at 575. This Court resolved the dispute in favor of the city "in deference to the well-established precedent that, within the boundaries of a home-rule city, the municipality's roadway authority prevails over the county's." *Id.* at 575-76 (citing *City of Breckenridge v. Stephens County*, 40 S.W.2d 43, 44 (Tex. 1931)). This Court recognized that while a county is vested by statute with general authority over roadways in the county, *see id.* at 576 (citing Tex. Transp. Code Ann. § 251.016 (West Supp. 2008)), a home-rule

---

[3] The District has not identified any case law that has conferred such discretion on an entity such as the District. The District cites *Halbert v. Upper Neches River Municipal Water Authority*, 367 S.W.2d 879 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.), for the proposition that courts will not interfere with a district's discretionary decisions absent an abuse of discretion. However, that case addresses a district's exercise of its legislatively granted power of eminent domain, not a district's efforts to oppose another entity's exercise of such power. *See* 367 S.W.2d at 881, 885-86. The District cites *City of San Antonio v. City of Boerne*, 111 S.W.3d 22 (Tex. 2003), for the proposition that courts will exercise a de novo review of coequal municipal corporations' differing interpretations of state law. However, de novo review in that case was based on the fact that the dispute was over the proper construction of state law, not on the fact that the disputing parties were coequal municipal corporations. *See* 111 S.W.3d at 25 ("We review matters of statutory construction *de novo*.").

11

city by statute exercises "exclusive control over and under the public highways" in the city, *see id.* (quoting Tex. Transp. Code Ann. § 311.001(a) (West 1999)).  In this case, unlike in *City of Laredo*, no statute vests the District with exclusive control over its parkland.  On the contrary, local government code section 251.001 expressly authorizes the City to condemn public property outside its municipal boundaries, *see* Tex. Loc. Gov't Code Ann. § 251.001(a), and parks and wildlife code section 26.001 expressly contemplates that such taking may include parkland, *see* Tex. Parks & Wild. Code Ann. § 26.001(a).  Moreover, there is no precedent providing that a municipal utility district's parkland authority prevails over a municipality's condemnation authority.[4]

Therefore, a municipality's determination under parks and wildlife code section 26.001(a) that there is no feasible and prudent alternative to the use or taking of parkland is subject to judicial review only where there is a showing that the municipality made the determination fraudulently, in bad faith, or arbitrarily and capriciously.  *See Whittington*, 174 S.W.3d at 898 (citing *Higginbotham*, 143 S.W.2d at 88; *West*, 238 S.W. at 978).

*Determination of No Feasible and Prudent Alternative*

For the district court's judgment to be affirmed, the record must support the district court's summary judgment that the City did not act fraudulently, in bad faith, or arbitrarily and capriciously in determining, in accordance with section 26.001(a)(1), that there was no feasible

---

[4] A condemnee may be able to prevent a condemnation when the property is already devoted to another public use and the condemnee establishes that the new condemnation would practically destroy, or at least materially interfere with, the existing public use.  *See Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616-17 (Tex. 2008).  The District has not alleged the applicability of this standard.

12

and prudent alternative to the taking of District parkland.[5]  *See* Tex. Parks & Wild. Code Ann. § 26.001(a).  The District does not allege that the City failed to make this determination in the first place.  *See Whittington*, 174 S.W.3d at 902-03 (in order to meet its summary judgment burden on necessity of taking, condemnor must first make conclusive demonstration that determination of necessity was made); *see also Newsom*, 171 S.W.3d at 270 (agency's failure to exercise discretion that required to exercise can be deemed arbitrary and capricious).  Nor does the District allege any facts that would indicate fraud or bad faith.  Instead, in essence, the District contends that the City, in making its determination to select the Parkland Route for the wastewater line, acted arbitrarily and capriciously and abused its discretion, because a feasible and prudent alternative to the Parkland Route exists.  An arbitrary and capricious act in the condemnation context is "willful and unreasoning action, action without consideration and in disregard of the facts and circumstances." *Newsom*, 171 S.W.3d at 269 (quoting *Wagoner v. City of Arlington*, 345 S.W.2d 759, 763 (Tex. Civ. App.—Fort Worth 1961, writ ref'd n.r.e.)).

The District contends that our construction of section 26.001(a) should be governed by *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).  In *Overton Park*, the Supreme Court construed federal statutes that prohibited the use of federal funds to finance

---

[5] The District also argues the existence of a fact issue on the City's compliance with section 26.001(a)(2)—under which the City must determine its project includes all reasonable planning to minimize harm to the parkland resulting from the taking.  *See* Tex. Parks & Wild. Code Ann. § 26.001(a) (West 2002).  However, section 26.001(a)(2) is not at issue in this lawsuit.  The District's pleadings request a declaration that "a feasible and prudent alternative exists to the taking of The Parkland Property," not that the project does not include all reasonable planning to minimize harm.  Indeed, in its motion for summary judgment, the District characterized its lawsuit as "a declaratory judgment action brought by Plaintiff asking the court to find and declare that a feasible and prudent alternative exists to the taking of certain dedicated parkland property."

13

any project requiring the use of a public park unless "there is no feasible and prudent alternative to use of such land" and "such program includes all possible planning to minimize harm to such park." 401 U.S. at 404-05 nn.2-3. The dispute in *Overton Park* involved the Secretary of Transportation's authorization of federal funds for the construction of a six-lane interstate highway that would result in the destruction of 26 acres of a 342-acre public park. *See id.* at 406. The Court interpreted the federal statute at issue to be a "plain and explicit bar" to the use of federal funds for construction of highways through parks except in "the most unusual situations." *Id.* at 411. Construing the statutory term "feasible," the Court required a showing that "as a matter of sound engineering it would not be feasible to build the highway along any other route" outside the parkland. *Id.* Next, construing the statutory term "prudent," the Court required a showing that alternative routes outside the parkland would "present unique problems." *Id.* at 413. Specifically, the Court found that concerns of cost, directness of route, and community disruption would need to reach "extraordinary magnitudes" to compel a conclusion that an alternative route was not prudent. *Id.* at 411-13.

More recently, the Kansas Supreme Court construed a Kansas statute that prohibited any project that would "encroach upon, damage or destroy any historic property" unless the governmental body determined that "there is no feasible and prudent alternative to the proposal" and "the program includes all possible planning to minimize harm to such historic property." *Reiter v. City of Beloit*, 947 P.2d 425, 435 (Kan. 1997). The landowner opposing the project at issue in *Reiter* argued that the phrase "no feasible and prudent alternative" should be construed as in *Overton Park*. *See id.* at 438. The Kansas court disagreed, based on a "critical distinction" between the federal and Kansas statutes. *See id.* According to the court, *Overton Park* involved the building

14

of a roadway, which necessarily involves a complete taking of property, and thus close scrutiny is warranted. *See id.* The court observed that the Kansas statute, in contrast, covered a "wide spectrum" of possible actions, and concluded that the phrase "no feasible and prudent alternative" should not be construed as tightly as in those situations where actual destruction of protected property is involved. *See id.* According to the court in *Reiter*, the decision of the governing body must be made on a case-by-case basis, taking into consideration all of the relevant factors. *Id.* Rather than adopting the *Overton Park* definitions of "feasible" and "prudent," the court in *Reiter* opted to give the terms their "natural and ordinary meaning" and, for judicial review, to ask "whether the governing body took a hard look at all relevant factors and, using plain common sense, based its determination upon the evidence." *Id.* The level of scrutiny would "depend in large part on the nature of each individual action and the effect such action will have on the historic property." *Id.* at 439.

The analysis in *Reiter* is more appropriate in our construction of parks and wildlife code section 26.001(a). Section 26.001 covers any "use or taking," *see* Tex. Parks & Wild. Code Ann. § 26.001(a), which a municipality can accomplish for a wide spectrum of possible purposes, *see* Tex. Loc. Gov't Code Ann. § 251.001(a). A governmental body, in making a determination under section 26.001(a), is entitled to exercise its discretion to consider all factors it deems relevant to the determination.[6] As held in *Reiter*, we conclude that the greater the impact a project has on the

---

[6] Unlike the statute at issue in *Reiter*, section 26.001 of the parks and wildlife code does not expressly provide that the condemnor may consider all relevant factors. *Compare id.* § 26.001(a), *with Reiter v. City of Beloit*, 947 P.2d 425, 435 (Kan. 1997). However, section 26.001 does not provide limits on what may be considered in determining whether a route is feasible and prudent. We do not interpret the absence of a provision in section 26.001 that the condemnor may consider

15

public land to be used or taken, the greater the level of scrutiny the governmental body must employ in weighing the feasibility and prudence of all alternative routes that do not impact the statutorily protected property. *See Reiter*, 947 P.2d at 438-39.

The parties do not dispute that the Alternate Route is feasible. The District contends, however, that the City failed to prove that no other feasible alternative exists. According to the summary judgment evidence, the wastewater line would need to connect from the Horizon Park Lift Station to a point to the southeast. The Parkland Route travels south into the District parkland, and then turns east out of the parkland, passing under a north-south highway. The Alternate Route travels east under the backyards of six single-family residential properties, continues east under the north-south highway, and then turns south along the eastern side of the highway to the same point as the Parkland Route. Based on the location of the lift station, which appears to be surrounded by residential properties except for the parkland to the south, the City asserts that the Alternate Route is the "one and only one alternate route which could be built and be feasible." The District did not submit evidence controverting this fact. Based on our review of the record, we conclude that the City did not act arbitrarily and capriciously in considering the Alternate Route as the only feasible alternative to the Parkland Route.

The District contends that the Alternate Route is not only feasible, but also a prudent alternative to the Parkland Route. The Parkland Route requires a taking of property, and therefore a stricter scrutiny should apply. *See id.* However, the taking does not have as extensive an impact

all relevant factors to mean that the legislature intended a condemnor *not* to consider any and all factors relevant to whether an alternative route is feasible and prudent.

as the six-lane interstate highway at issue in *Overton Park*.  *See* 401 U.S. at 406.  Rather, the taking consists of a 30-foot-wide temporary construction easement and a 20-foot-wide permanent easement. Although the installation of the wastewater line, according to the summary judgment evidence, will likely result in the destruction of cedar thicket on the easements, the property would remain available for use as parkland following the restoration of topsoil.  Further, the City has asserted that it would take steps to preserve hardwood trees, plan the route of the line to minimize large tree removals as much as practicable, and re-vegetate the surface once the topsoil is restored following the pipe's installation.

In rejecting the Alternate Route as not prudent, the City, according to the council members' affidavits in the summary judgment record, considered and relied on the advice of the City Engineer and an independent engineering consultant, both of whom recommended rejection of the Alternate Route as not prudent.  The engineers determined that the Parkland Route could be constructed through the parkland using the "open-cut" method, by which a trench is dug, the wastewater pipe installed, and the trench refilled.  The Alternate Route would require boring under the backyards of six adjacent, single-family residential properties, which method involves horizontal boring between bore pits, placement of a steel encasement pipe, and insertion of the wastewater pipe inside the casing.  According to the engineers, because of these differences in the installation methods, installation at the Alternate Route would cost over $300,000 more than the Parkland Route and could encounter unforeseen problems during the boring process; operation at the Alternate Route could be less efficient due to the increased difficulty in setting the slope of the line; and any future repair and maintenance at the Alternate Route would be more costly, difficult, and time-

17

consuming, and would require interruption of service. The engineers also asserted that both the initial installation and any future maintenance issues at the Alternate Route could be disruptive to the homeowners. The City considered the engineers' recommendations in a public hearing, where the City also heard comments made by District officials and representatives in opposition to the Parkland Route. The City rejected the Alternate Route as not prudent, given its increased cost and engineering challenges.

Based on our review of the record, considering the impact of the City's taking at the Parkland Route on the parkland, and the installation, operational, maintenance, and community issues involved with the Alternate Route, we find that the City's approval of the Parkland Route was not a willful and unreasoning action, or one taken in disregard of the facts and circumstances. *See Newsom*, 171 S.W.3d at 269 (quoting *Wagoner*, 345 S.W.2d at 763). We conclude that the City did not act arbitrarily and capriciously, or abuse its discretion, in determining that there was no feasible and prudent alternative to the taking of District parkland. Consequently, we affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Concurring Opinion by Justice Patterson

Affirmed

Filed:  July 10, 2009

18